**DAVID M.C. PETERSON**
California State Bar No. 254498
**FEDERAL DEFENDERS OF SAN DIEGO, INC.**
225 Broadway, Suite 900
San Diego, CA 92101-5030
(619) 234-8467/Fax: (619) 687-2666
E-Mail: david_peterson@fd.org

Attorneys for Mr. Cruz-Merino

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

**(HONORABLE ANTHONY J. BATTAGLIA)**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>v.<br><br>GREGORIO CRUZ-MERINO (1),<br>aka ROBERTO TORRES- HERNANDEZ,<br><br>MIGUEL MERINO-CALVERO (2),<br><br>　　　　Defendants. | Case No. 08cr1165-JM<br><br>Date:　May 16, 2008<br>Time:　11:00 a.m.<br><br>**MR. CRUZ-MERINO'S RESPONSE AND OPPOSITION TO MATERIAL WITNESSES' MOTION FOR VIDEO DEPOSITION** |

TO:　KAREN P. HEWITT, UNITED STATES ATTORNEY;
　　　LUELLA CALDITO, ASSISTANT UNITED STATES ATTORNEY:

**I.**

**STATEMENT OF FACTS**

On March 27, 2008, Mr. Cruz-Merino was arrested in a Chevrolet Tahoe approximately 9 miles North of the International Border on Japatul Road. This arrest occurred after agents in plain clothes and unmarked vehicles observed the Tahoe traveling eastbound on Japatul Valley Road in Jamul, California. As Agent Penagos stationed his vehicle on Lyons Valley Road, he could observe any vehicles exiting onto Spirit Valley Road. Agent Penagos began following the Tahoe to conduct surveillance. According to vehicle records checks, the vehicle was registered to an owner in Oceanside, California. Agent Miranda, who was in a

1  marked border patrol vehicle, responded to request for assistance. He attempted a vehicle stop, by activation
2  of emergency lights and siren. The Tahoe continued driving for one mile, and terminated pursuit at the
3  Greenfield Avenue exit on Interstate 8. Plainclothes agents followed the Tahoe. Agent Penagos deployed
4  a controlled tire deflation device and stopped the vehicle. Three individuals and one in the passenger seat
5  were identified as undocumented aliens with no legal right to enter or remain in the United States. Gregorio
6  Cruz-Merino was arrested as the driver of the vehicle.

7  On April 15, 2008, Mr. Cruz-Merino pled not guilty to a six-count indictment alleging transportation
8  of illegal aliens in violation of Title 8, United States Code § 1324(a)(1)(A)(ii) and bringing aliens into the
9  United States for the purpose of commercial advantage and private financial gain, in violation of Title 8,
10 United States Code § 1324(a)(2)(B)(ii).

11  On May 7, 2008, Christopher Lock, the attorney for the three material witnesses in this case, Agustin
12 Cavero-Ortiz ("Cavero"), Donaciano Ramirez-Merino ("Merino"), and Severino Ramirez-Mejia
13 ("Mejia") filed a motion for a videotaped deposition pursuant to 18 U.S.C. § 3144, alleging that none of the
14 material witnesses has any prospects for a surety.

**II.**

**THE MOTION FOR THE MATERIAL WITNESS' DEPOSITION SHOULD BE
DENIED BECAUSE THERE IS NO SHOWING OF UNAVAILABILITY
OF THE WITNESSES AND THE MOTION IS MADE PREMATURELY**

18  Title 18, United States Code § 3144 governs the detention of individuals who may give testimony
19 material to a criminal proceeding. This section provides that where the witness is not able to meet the
20 conditions of the bond set by the court and is detained, the court may order the deposition of the witness
21 where (1) deposition may secure the testimony of the witness and (2) further detention is not necessary to
22 prevent a failure of justice. See 18 U.S.C. § 3144. In this case, the material witnesses have moved for
23 videotaped depositions pursuant to 18 U.S.C. § 3144. Although a deposition may secure the material witness'
24 testimony, this Court should order the material witness' continued detention in order to protect Mr. Cruz-
25 Merino's constitutional rights. In the alternative, this Court should modify the conditions of release so that
26 the material witnesses can remain in the United States until this case is resolved.

27  Depositions in criminal cases are generally disfavored for several reasons, including the threat to
28 the defendant's Sixth Amendment confrontation rights. United States v. Drogoul, 1 F.3d 1546, 1551-52

1  (11th Cir. 1993). All defendants have the right to confront witnesses against them. See U.S. CONST.
2  Amend. VI. The Supreme Court's decision in Crawford v. Washington, 541 U.S. 36 (2004), reaffirmed this
3  principle — developed at common law and incorporated into the Confrontation Clause of the
4  Sixth Amendment by the Framers — that testimonial statements may not be admitted against a defendant
5  where the defendant has not had the opportunity to cross-examine the declarant. This is true even where the
6  statements fall within a "firmly rooted hearsay exception" or bear "particularized guarantees of
7  trustworthiness." Id. at 60.
8        In Crawford, the Supreme Court noted that the Sixth Amendment was drafted in order to protect
9  against the "civil-law mode of criminal procedure" and "its use of *ex parte* examinations as evidence against
10 the accused." Id. at 50. Such *ex parte* examinations implicate Sixth Amendment concerns because they are
11 "testimonial" in nature. The "text of the Confrontation Clause reflects this focus" and applies to "witnesses
12 against the accused - in other words, those who bear testimony." Id. at 51 (internal quotations omitted).
13 Although the Supreme Court declined to define "testimonial" evidence, they noted that an "accuser who
14 makes a formal statement to government officers bears testimony in a sense that a person who makes a casual
15 remark to an acquaintance does not." Id. The Confrontation Clause does not permit such testimonial
16 statements to be admitted at trial against an accused without the constitutionally prescribed method of
17 determining reliability, *i.e.*, confrontation. Id. at 61-65. In other words, "[w]here testimonial evidence is at
18 issue . . . the Sixth Amendment demands . . . unavailability [of the declarant] and a prior opportunity for
19 cross-examination." Id. at 68.
20       Despite Crawford's broad prohibition of testimonial statements at trial where the defendant has no
21 opportunity to confront the witness, there are some situations in which depositions may nonetheless be taken.
22 In these situations, the burden is on the moving party to establish *exceptional circumstances* justifying the
23 taking of depositions. Drogoul, 1 F.3d 1546 at 1552 (citing United States v. Fuentes-Galindo, 929 F.2d 1507,
24 1510 (10th Cir. 1991)). The trial court's discretion is generally guided by consideration of certain "critical
25 factors," such as whether (1) the witness is unavailable to testify at trial; (2) injustice will result because
26 testimony material to the nonmoving party's case will be absent; and (3) countervailing factors render taking
27 the deposition unjust to the nonmoving party. Id. at 1552.
28 //

1    When considering this issue, this Court must balance the interests of the government and the
2 accused, as well as the interests of the material witnesses. Although the material witnesses may have a liberty
3 interest at stake, that interest is outweighed by Mr. Cruz-Merino's weighty constitutional rights of
4 confrontation and due process of law. The Confrontation Clause serves several purposes: "(1) ensuring that
5 witnesses will testify under oath; (2) forcing witnesses to undergo cross-examination; and (3) permitting the
6 jury to observe the demeanor of witnesses." United States v. Sines, 761 F.2d 1434, 1441 (9th Cir. 1985).
7 It allows the accused to test the recollection and the conscience of a witness through cross-examination and
8 allows the jury to observe the process of cross-examination and make an assessment of the witness'
9 credibility. Maryland v. Craig, 497 U.S. 836, 851 (1989); Ohio v. Roberts, 448 U.S. 56, 63-64 (1980). In
10 a case such as the one, where the material witnesses have received the benefit of the Government refraining
11 from pressing criminal charges in return for his testimony against the accused,[1] it is important that the jury
12 see the reaction and demeanor of the material witness when he is confronted with questions that will bring
13 out such facts in order for the jury to decide whether to believe his statements and/or how much credit to give
14 to his testimony. The jury's ability to make such an assessment would be compromised by a videotaped
15 deposition because the tape may not preserve subtle reactions of the witnesses under cross-examination that
16 may favor the accused.

17    Moreover, the decision to grant video depositions is governed by Federal Rule of Criminal
18 Procedure 15(a) which states that a material witness' deposition may be taken only upon a showing of
19 "exceptional circumstances." United States v. Omene, 143 F.3d 1167, 1170 (9th Cir. 1998). The material
20 witnesses here, however, have failed to demonstrate any "exceptional circumstances" justifying the
21 impingement of Mr. Cruz-Merino's Fifth and Sixth Amendment rights. Indeed, the material witnesses do not
22 even make a claim of hardship or exceptional circumstances. See Mat. Wit. Mtn. at 4.

23    Calvero, Merino, and Mejia argue that under Torres-Ruiz v. United States District Court, 120 F.3d
24 933, 935 (9th Cir. 1997), it is Mr. Cruz-Merino who must demonstrate that their further detention is not

---

[1] This Court should be mindful of the fact that the only reason the Government has not charged the material witnesses with a crime is that the Government seeks to introduce their testimony against the accused. The material witnesses could *at least* have been charged with illegal entry under 8 U.S.C. § 1325, which carries a maximum sentence of six (6) months imprisonment. Needless to say, the Government would not concern itself with the material witnesses' liberty interests had it, in fact, charged them with this offense.

necessary to prevent a failure of justice. However, the very case cited shows that it is the material witness who must demonstrate that his "testimony can adequately be secured by deposition," and that "further detention is not necessary to prevent a failure of justice." Id., citing 18 U.S.C. § 3144. Upon such showing, the district court must order his deposition and prompt release. 18 U.S.C. § 3144 ("No material witness may be detained" if he makes such a showing). However, the motion filed by Calvero, Merino, and Mejia makes no such showing. Instead, it is an attempt to shift the burden to Mr. Cruz-Merino. This is not Mr. Cruz-Merino's burden, and Calvero, Merino and Mejia fail to state any claim satisfying their burden.

In addition, this Court should consider the unique circumstances faced by the Ninth Circuit in Torres-Ruiz. Unlike this case, in Torres-Ruiz the material witnesses' motion for videotape deposition was unopposed by the defendant. 120 F.3d at 934-35. Perhaps more importantly, in Torres-Ruiz, the defendant entered a guilty plea less than two weeks after the motion for deposition was made, indicating that the case was already near disposition when the motion was made. Id. at 936-37. As of now, however, the instant case stands in a much different procedural posture.

Mr. Cruz-Merino has pled not guilty to all counts of the Indictment. This motion is to be heard before the substantive motion hearing date currently scheduled before Judge Miller on May 16, 2008. The defense has yet to conduct extensive investigation in this case. Mr. Cruz-Merino has not been provided with sufficient discovery in the case, including the A-files of the three material witnesses. In short, it is very early in the case. To require Mr. Cruz-Merino to cross-examine the material witnesses at the current juncture of the proceedings would severely prejudice his future trial rights. Any cross examination of the material witnesses at this point would be at best meaningless, and at worst ineffective and potentially harmful to Mr. Cruz-Merino and his defense.

Finally, if the Court determines that the issue must be addressed at this point in time, the Court can easily resolve the issue by modifying the conditions of release for the material witnesses so that their continued detention would be unnecessary. Conditions of release for material witnesses is governed by 18 U.S.C. § 3142. Under this section, "[t]he judicial officer **shall** order the pretrial release of the person on personal recognizance, or upon execution of an unsecured personal appearance bond . . . unless the judicial officer determines that such release will not reasonably assure the appearance of the person as required." 18 U.S.C. § 3142(b). Moreover, the Bail Reform Act states that "[t]he judicial officer may not impose a

financial condition that results in the pretrial detention of the person." 18 U.S.C. § 3142(c)(2). This mandate, combined with the preference for release upon one's own recognizance, strongly suggests that the proper remedy for the material witnesses in this case is a motion to modify the terms of their release, not for the draconian remedy of immediately ordering a videotaped deposition and deporting the material witnesses to Oaxaca, Mexico, which is approximately 1700 miles from San Diego, especially not at this very early stage of the proceedings.

The material witnesses here allege that they cannot secure a personal surety able to post an appearance bond. Nowhere, however, do the material witnesses state their unwillingness to remain in the United States during the pendency of this case. This Court can, and should, modify the material witnesses' bonds to allow them to re-gain their freedom, while at the same time safeguarding Mr. Cruz-Merino's Sixth Amendment rights. The material witnesses have no incentive not to come back to court to testify. The material witnesses are not being charged with a crime. The material witnesses have no incentive to flee the country. Indeed, if the statement of facts in support of the complaint in this case is to be believed, these material witnesses were prepared to pay money to be smuggled illegally into the United States by friends and family members. Therefore, they obviously want to remain in this country, fully within the subpoena power of the Court.

### III.

### CONCLUSION

For the reasons stated above, Mr. Cruz-Merino respectfully requests that this Court deny the material witness' motion for a videotaped deposition.

Respectfully submitted,

DATED: May 15, 2008                  /s/ David M.C. Peterson
                                      **DAVID M.C. PETERSON**
                                      Federal Defenders of San Diego, Inc.
                                      Attorneys for Mr. Cruz-Merino

**CERTIFICATE OF SERVICE**

Counsel for Defendant certifies that the foregoing is true and accurate to the best information and belief, and that a copy of the foregoing document has been caused to be delivered this day upon:

Courtesy Copy to Chambers

Copy to Assistant U.S. Attorney via ECF NEF

Copy to Defendant

Dated: May 15, 2008        /s/ DAVID M. PETERSON
Federal Defenders of San Diego, Inc.
225 Broadway, Suite 900
San Diego, CA  92101-5030
(619) 234-8467  (tel)
(619) 687-2666  (fax)
david_peterson@fd.org (email)

H:\DMP\Cases\1324\Torres-Hernandez\opp mw depo.wpd